UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERISURE MUTUAL
INSURANCE COMPANY,

   Plaintiff,

v.              Case No. 8:18-cv-2878-T-24 AAS

COMMERCIAL POOL CLEANERS,
INC. and BELKYS GARCIA
DOMINGUEZ,

   Defendant.
_____/

## **ORDER**

This cause comes before the Court on two motions: (1) Amerisure's Motion for Summary Judgment (Doc. No. 28), which Defendant Dominguez opposes (Doc. No. 39); and (2) Defendant Dominguez's Motion for Summary Judgment[1] (Doc. No. 32), which Amerisure opposes (Doc. No. 37). As explained below, the Court grants Defendant Dominguez's motion and denies Amerisure's motion.

## **I. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has

---

[1] Defendant Dominguez requests a hearing on the motion, but the Court finds that a hearing is not necessary.

discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

## II. Background

On May 23, 2017, Defendant Belkys Garcia Dominguez ("Defendant") was working for Commercial Pool Cleaners ("CPC") and driving its 2005 Ford Ranger with CPC's permission.[2] On that day, Defendant was involved in a car accident with Steven Shaffer, and Defendant later demanded that Amerisure tender its available uninsured motorists ("UM") limits to her.

Amerisure issued commercial automobile policies to CPC that covered the 2005 Ford Ranger from October 2014 through October 2018. The parties do not dispute that Amerisure's insurance policy covered the car accident at issue. Instead, they dispute the amount of UM coverage available under the policy.

CPC's president, Rick Rinberger, filled out the application for insurance coverage. The application required Rinberger to make a decision regarding the amount of UM coverage he wanted for CPC. The application stated the following:

> Florida law requires that automobile liability policies include Uninsured Motorists Coverage at limits equal to the Bodily Injury Liability Coverage (split limits) or Combined Single Limit for Liability Coverage in your policy, unless you select a lower limit offered by the company or reject Uninsured Motorists Coverage entirely.
>
> Please indicate by initialing below whether you entirely reject Uninsured Motorists Coverage, whether you select this coverage at limits lower than the Bodily Injury Liability Limits or Combined Single Limit for Liability Coverage or equal to your Bodily Injury Liability Limits or Combined Single Limit for Liability Coverage of your policy

---

[2] The Court refers to Belkys Garcia Dominguez as "Defendant" throughout this order, as Amerisure has dismissed its claims against CPC. (Doc. No. 13, 14).

(Doc. No. 1-3, p. 2). Rinberger placed his initials in two separate, conflicting places and then signed the next page:

| (Initials) | | | | | |
|---|---|---|---|---|---|
| _____ | I reject Uninsured Motorists Coverage entirely. | | | | |
| _RR_ | I select Uninsured Motorists limits equal to my Bodily Injury Liability Limits or Combined Single Limit for Liability Coverage (if you select this option, disregard the bold statement on page 1 unless you are designated as an individual in the declarations and elect non-stacked coverage on page 3). | | | | |
| _____ | I reject Bodily Injury Uninsured Motorists Coverage at limits equal to my Bodily Injury Liability Coverage (split limits) or Combined Single Limit for Liability Coverage and I select the following lower limits. | | | | |

(Choose one):

| (Initials) | Split Limits | OR | (Initials) | | Combined Single Limit |
|---|---|---|---|---|---|
| _____ | $ 10,000/20,000 | | _____ | $ | 20,000 |
| _____ | 25,000/50,000 | | _RR_ | | 50,000 |
| _____ | 50,000/100,000 | | _____ | | 100,000 |
| _____ | 100,000/300,000 | | _____ | | 250,000 |
| _____ | 250,000/500,000 | | _____ | | 300,000 |
| _____ | 500,000/1,000,000 | | _____ | | 350,000 |
| _____ | $ _____ *(Other) | | _____ | | 500,000 |
| | | | _____ | | 1,000,000 |
| | | | _____ | $ | _____ *(Other) |

I understand and agree that selection of any of the above options applies to my liability insurance policy and future renewals or replacements of such policy which are issued at the same Combined Single Limit or Bodily Injury Liability Limits. If I decide to select another option at some future time, I must let the Insurance Company or my agent know in writing.

_____[signature]_____     10-8-14
Applicant's/Named Insured's Signature     Date

(Doc. No. 1-3, p. 3-4).

3

The way that Rinberger initialed the application indicated that he was selecting two conflicting amounts of UM coverage. By initialing the second line on the top left part of the page, he selected UM coverage in an amount equal to his bodily injury limits (which was $1 million). However, by initialing the second line on the right side of the page, he partially selected a lower UM limit of $50,000.[3]

Amerisure issued the commercial automobile policies to CPC with a stated $50,000 UM limit, and CPC paid insurance premiums based on the $50,000 UM limit. The parties do not dispute that Rinberger wanted the lower $50,000 UM limit.[4] (Doc. No. 39, p. 4, n.1). However, the parties dispute the ramifications of Rinberger filling out the insurance application in a conflicting manner.

After the car accident, Defendant asked Amerisure to disclose the available insurance coverage under CPC's policy. Amerisure initially responded on July 17, 2017 that there was $1 million in UM coverage. (Doc. No. 27-4). However, on November 9, 2018, Amerisure changed its response, stating that there was only $50,000 in UM coverage. (Doc. No. 27-6).

Defendant did not accept Amerisure's contention that there was only $50,000 in UM coverage. Therefore, Amerisure filed the instant lawsuit for a declaratory judgment regarding the amount of UM coverage available under CPC's policy.

## III. Motions for Summary Judgment

Amerisure and Defendant filed cross-motions for summary judgment on the issue of the amount of UM coverage available for the car accident. As explained below, the Court agrees

---

[3] In order to completely select the lower UM limit of $50,000, Rinberger was required to initial the *third* line on the top left part of the page (instead of the *second* line on the top left part of the page).
[4] The parties do dispute whether Rinberger *effectively conveyed* to Amerisure prior to the issuance of the policy that CPC wanted a reduced amount of UM coverage.

with Defendant that there is $1 million in UM coverage, because Rinberger failed to effectively select a lower limit in writing, as required by Florida Statute § 627.727(1).

Section 627.727 controls this issue and provides the following. First, § 627.727(2) provides, in relevant part, that "[t]he limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit . . . as may be selected by the named insured." Furthermore, the statute provides the following:

> No motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state . . . unless uninsured motor vehicle coverage is provided therein or supplemental thereto . . . . However, the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a ***written rejection*** of the coverage on behalf of all insureds under the policy. . . . The rejection or selection of lower limits ***shall be made on a form approved by the [Office of Insurance Regulation]***. . . . If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds.

Fla. Stat. § 627.727(1) (emphasis added).

Thus, based on § 627.727, in order for Amerisure's insurance policy to be issued with UM limits less than the bodily injury limit, Rinberger must have made a written rejection of such coverage on a form approved by the Office of Insurance Regulation ("OIR"). In this case, the parties do not dispute that the insurance application form was approved by the OIR. Instead, the parties dispute two things: (1) whether Rinberger effectively made a written rejection of UM limits equal to the bodily injury limits and instead selected UM limits of $50,000; and (2) if Rinberger did not effectively make a written rejection of UM limits equal to the bodily injury limits, whether the Court may consider other evidence showing that Rinberger selected a lower UM limit. The Court answers both of these questions in the negative.

5

### A. Written Rejection and Selection of Lower UM Coverage

Amerisure argues that because Rinberger initialed that CPC wanted $50,000 in UM coverage on the insurance application and then signed the application, Amerisure is entitled to a conclusive presumption that he made an informed and knowing election of UM coverage with limits less than the bodily injury limit of $1 million. However, Defendant points out that Amerisure ignores the undisputed fact that Rinberger also initialed that CPC wanted UM limits equal to its bodily injury limit.

Upon review, the Court agrees with Defendant that there is a patent ambiguity on the face of the insurance application, because Rinberger selected two mutually exclusive options regarding the amount of UM coverage being sought.[5] Having done that, Rinberger cannot be said to have validly made a written selection of either option. When there is no written rejection of UM coverage or written election of an amount of UM coverage that is less than the bodily injury limits, Florida Statute § 627.727 dictates that the UM limit is equal to the bodily injury limit in the policy. Accordingly, the Court concludes that because Rinberger did not make a valid written election of an amount of UM coverage that is less than the policy's bodily injury limits, CPC's policy was required to be issued with $1 million in UM coverage.

### B. Other Evidence of a Knowing Rejection

Next, Amerisure argues that even if it is not entitled to a conclusive presumption that Rinberger made an informed and knowing election of UM coverage with limits less than the bodily injury limit of $1 million, it is still entitled to a finding that there is only $50,000 in UM

---

[5] It is curious to the Court how Amerisure can argue that Rinberger's selection of UM coverage on the application was not ambiguous, given the fact that Amerisure initially responded that there was $1 million in UM coverage.

coverage. Specifically, Amerisure argues that the Court may consider other evidence showing that Rinberger made an informed and knowing election of such lower UM coverage.

In support of its position, Amerisure cites to a number of cases in which the courts have considered other evidence besides a written rejection/selection on an OIR-approved form when determining whether there was an informed and knowing election regarding UM coverage.[6] To put those cases in context, Defendant cites additional cases in an attempt to show that Amerisure's cases are based on a faulty foundation. The Court summarizes the parties' relevant cases below.

Before addressing the case law, the Court points out that two important parts of § 627.727(1) cited above were added to the statute in 1982 and 1984. First, the requirement that the rejection of UM coverage or the election of lower UM coverage must be made *in writing* was added to the statute and became effective on October 1, 1982. See Berman v. Liberty Mutual Ins. Co., 359 F. Supp.3d 1158, 1160 (M.D. Fla. Jan. 16, 2019). Second, the conclusive presumption—that a knowing and informed rejection or election was made that arises when an applicant signs an approved form—was added to the statute and became effective on October 1, 1984. See Auger v. State Farm Mut. Auto. Ins. Co., 516 So. 2d 1024, 1025 (Fla. 2d DCA 1987). As such, cases analyzing policies issued prior to those dates applied different standards for determining whether a rejection of UM coverage or an election of a lower amount was made, because a written rejection/election was not required.

---

[6] Some of the cases analyzed another subsection of § 627.727, subsection (9), which deals with the election of stacked versus unstacked UM coverage. Subsection (9), like subsection (1), provides that if the election is made in writing on a form approved by the OIR and is signed by the applicant, it will be conclusively presumed that there was an informed, knowing acceptance of such limitations on the UM coverage.

In <u>Del Prado v. Liberty Mutual Insurance Company</u>, 400 So. 2d 115, 116 (Fla. 4th DCA 1981), the insurance company provided evidence that the insured-company had rejected UM coverage, although there was no evidence of a written rejection. The trial court found that there was no UM coverage, and the injured driver (an independent contractor for the insured-company) appealed. <u>See</u> <u>id.</u> The injured driver relied on a Department of Insurance bulletin that required that the rejection be made in writing in order to be effective. <u>See</u> <u>id.</u> at 116-17. The appellate court rejected his argument, stating:

> [I]f there is a statutory or other administratively imposed obligation to secure a written rejection, certainly the named insured can waive this requirement which was designed for its protection. Statutory rights can be waived.

<u>Id.</u> at 116.

The <u>Del Prado</u> case came out in 1981, and therefore, the written rejection/election requirement had not yet been added to § 627.727(1). Despite the fact that <u>Del Prado</u> dealt with a version of § 627.727(1) that did not contain the written rejection/election requirement, that case has been cited and provides the foundation for later cases concluding that the statutory written rejection/election requirement of § 627.727 can be waived and other evidence of a rejection/election can be considered.

The court in <u>Quirk v. Anthony</u>, 563 So. 2d 710, 715 (Fla. 2d DCA 1990) ("<u>Quirk</u> I") followed <u>Del Prado</u>.[7] One of the issues before the court was whether UM coverage in a policy issued in December 1984 could be rejected without a written rejection. <u>See</u> <u>id.</u> The court found that it could, stating:

> [A person does not] automatically receive[] UM coverage in the absence of a written rejection by the named insured. We agree [with

---

[7] The Florida Supreme Court affirmed <u>Quirk</u> I, but the issue of whether a rejection of UM coverage must be in writing to be effective was not addressed in the opinion. <u>See</u> <u>Travelers Ins. Co. v. Quirk</u>, 583 So. 2d 1026 (Fla. 1991).

8

> Del Prado] that an insured can waive rights which it receives by regulation or statute. Thus, once . . . [it is] establishe[d] that no written rejection exists, the burden of proof shifts to the insurance carrier. Auger v. State Farm Ins. Co., 516 So.2d 1024 (Fla. 2d DCA 1987). The carrier must then prove that the named insured waived the right to a written rejection by otherwise making a knowing rejection.

Id.

The Quirk I court relied on Auger to support its conclusion that an insurance company could rely on other evidence of a rejection when it did not have evidence of a written rejection of UM coverage. However, the Auger court analyzed the rejection of UM coverage in policies that were issued prior to October 1, 1982, and thus, the insurance company issuing those policies was not required by § 627.727 to produce written evidence of a rejection of UM coverage. See Auger, 516 So. 2d at 1025.

Thereafter, Florida courts cited to Quirk I and its progeny to support their conclusion that a written rejection/election regarding UM coverage is not required if there is other evidence of a knowing rejection/election, despite § 627.727 explicitly setting forth the requirement. See Chmieloski v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 563 So. 2d 164, 166 (Fla. 2d DCA 1990); Adams v. Aetna Cas. & Surety Co., 574 So. 2d 1142, 1147 (Fla. 1st DCA 1991); Liberty Mut. Ins. Co., Inc. v. Ledford, 691 So. 2d 1164, 1166 n.3 (Fla. 2d DCA 1997); Union American Ins. Co. v. Cabrera, 721 So. 2d 313, 314 (Fla. 3d DCA 1998); Belmont v. Allstate Ins. Co., 721 So. 2d 436, 438 (Fla. 5th DCA 1998); Popson v. 21st Century Centennial Ins. Co., 2015 WL 12838360, at *7 (M.D. Fla. Dec. 7, 2015); Richard v. GEICO General Ins. Co., 2017 WL 5953298, at *2 (N.D. Fla. Jan. 30, 2017).

Defendant argues that because the courts in Del Prado and Auger were not analyzing insurance policies issued after October 1, 1982—when the requirement of a written rejection/election regarding the amount of UM coverage was added—those cases cannot provide

9

authority for allowing consideration of other evidence of a rejection/election. Likewise, because Quirk I and its progeny are based on Del Prado and Auger, Defendant argues that those cases also cannot provide authority for allowing consideration of other evidence of a rejection/election regarding the amount of UM coverage being sought. Defendant relies on Berman v. Liberty Mutual Insurance Company to support her position.

In Berman, an insurance company issued an insurance policy to Asbury, and the policy stated that UM coverage was "Rejected/Statutory Minimum." See Berman, 359 F. Supp.3d at 1159. The plaintiff was Asbury's employee, and he was involved in a car accident while he was a passenger in Asbury's car that was covered by the insurance policy. See id. The issue before the court was whether an insured in Florida could waive UM coverage in a manner that was not in writing on a form approved by the OIR. See id. at 1160. The Berman court concluded that there must be strict compliance with the requirement that a rejection/election be made in writing on an approved form, stating:

> [T]here are a string of Florida cases that conclude an insured can waive its right to UM coverage orally or without using the approved form. . . . Significantly, this line of cases all lead back to Del Prado, which was issued in June of 1981 and considered a 1971 version of section 627.727(1) along with an insurance department bulletin. . . . [None of those cases] reconcile Del Prado and the significance of the 1982 amendment and later versions of section 627.727(1), which required waiver of UM coverage to be in writing. Nor is the Court convinced by Defendant's argument that the requirement that waiver of UM coverage be in writing is merely a shifting evidentiary standard . . . . Section 627.727(1) reflects a "legislative intent to place a heavy duty upon insurers to obtain a knowing rejection of statutorily provided for uninsured motorist limits and to reflect a public policy in Florida to favor full uninsured motorist coverage for Florida residents . . . ." To allow an insured to orally waive its right to have UM coverage unless waived on a specific approved written form would frustrate the purpose of the 1982 amendment. Moreover, there are multiple rights provided in section 627.727, including (1) the right to UM coverage when purchasing bodily injury insurance (substantive right) and (2) to have the right to UM coverage waived only when in writing (procedural right). To allow

10

> alternative or less onerous waivers of the procedural right to only have UM coverage waived through an approved written form renders the procedural right meaningless.
>
> \* \* \*
>
> More importantly, Defendant's construction contradicts the plain language of section 627.727(1). The Florida Supreme Court held that when interpreting a statute, there is no need to resort to rules of statutory construction "when the language of a statute is plain and its meaning clear . . . ." Section 627.7[2]7(1) unambiguously requires a waiver of UM coverage to be in writing before that waiver can be effective. In this case, it is undisputed that Asbury did not want UM coverage and that [the insurance company] did not intend to provide it. However, it is also undisputed that Asbury did not waive UM coverage on an approved form prior to [the plaintiff-employee's] accident.
>
> \* \* \*
>
> To the extent any waiver might have occurred orally or on a non-approved insurance waiver form, such waiver would not be effective because that waiver failed to comply with section 672.727(1).

Id. at 1160-63 (internal citations omitted).

This Court finds Berman to be directly on point and persuasive in its analysis. The plain language of § 627.727(1) mandates that the amount of UM coverage equals the policy's bodily injury limit unless the named insured ***makes a written rejection*** of such coverage on a form approved by the OIR. If the Court were to consider other evidence of a rejection/election, the Court would be ignoring the plain language of § 627.727(1). The statute was specifically amended to add that the rejection must be in writing; ignoring that directive would render the amendment superfluous, as courts were considering evidence of both oral and written rejections/elections prior to the amendment. Thus, this Court cannot consider any other evidence that would show that Rinberger elected for CPC to have reduced UM limits of $50,000.

Furthermore, even if the Court could consider other evidence, Amerisure fails to point to any communications between itself and CPC (other than the insurance application) prior to the issuance of the insurance policy. As there is no evidence of other communications, there is no

11

evidence that CPC knowingly selected a lower UM limit and clearly conveyed that decision to Amerisure.

Additionally, in response to Defendant's motion, Amerisure now argues that it is not relying on an oral communication prior to the issuance of the policy to show that CPC selected lesser UM limits. Instead, it argues that evidence of Rinberger's knowing election of lower UM limits comes from three things: (1) Rinberger's selection of reduced UM limits of $50,000 on the insurance application; (2) Rinberger's testimony during his examination under oath (which occurred on November 6, 2018) and his deposition (which occurred on September 4, 2019), in which he explains that he intended to select the lower UM limit of $50,000; and (3) CPC's stipulation in this case in which it reiterates that it intended to procure only $50,000 in UM coverage and that Rinberger mistakenly initialed the wrong line on the application. (Doc. No. 12; Doc No. 27-5; Doc. No. 27-9).

However, Amerisure's position relies primarily on CPC and Rinberger's after-the-fact explanation of how Rinberger filled out the insurance application. There is no evidence that Rinberger conveyed this explanation to Amerisure prior to the issuance of the policy, and therefore, there is no evidence that Amerisure received an unambiguous request for lower UM limits prior to issuing the policy.

Furthermore, Defendant argues that because Rinberger's selections on the insurance application created a patent ambiguity, extrinsic evidence cannot be used to explain the ambiguity. See Philadelphia Indem. Ins. Co. v. Stazac Mgmt., Inc., 2018 WL 2445816, at *9 (M.D. Fla. May 31, 2018); Sporting Products, LLC v. Pacific Ins. Co., Ltd., 2012 WL 13018367, at *9 (S.D. Fla. Jan. 6, 2012). Instead, Defendant argues that the insurance application becomes

part of the insurance policy,[8] and the Court should construe the application in favor of the greater selected UM insurance coverage. See Philadelphia Indem., 2018 WL 2445816, at *9 (stating that a court should liberally interpret an insurance policy with a patent ambiguity in favor of the insured); Sporting Products, 2012 WL 13018367, at *9 (stating that courts may resolve a patent ambiguity by liberally interpreting the language in favor of coverage).

The Court agrees that it should not consider extrinsic evidence to explain Rinberger's selections on the insurance application.[9] If this Court allowed extrinsic evidence to explain a patently ambiguous selection of the amount of UM coverage that had been sought, the Court would be ignoring the purpose and directive of § 627.727. That statute requires two important things. First, by requiring that insurance companies use an OIR-approved form, the statute ensures that applicants are given specific important information regarding UM coverage so that they can make an informed and knowing decision.[10] Second, by requiring a written rejection/selection regarding the amount of UM coverage being sought on the OIR-approved

---

[8] "Under Florida law, the application and policy together make up the insurance contract." GEICO Marine Ins. Co. v. Baron, 2019 WL 3502988, at *1 (M.D. Fla. Aug. 1, 2019).
[9] The Court is not saying that because there is a patent ambiguity arising from the way that Rinberger filled out the insurance application, the insurance application should just simply be construed in favor of greater coverage. Instead, the Court is saying that because there is a patent ambiguity in the insurance application, the Court cannot find that Rinberger clearly selected any specific level of UM coverage. Therefore, because he did not make a valid written rejection/election, § 627.727 dictates that CPC's policy should have been issued with UM coverage equal to the bodily injury limits.
[10] The statute requires that certain specific information be conveyed in a certain manner. Specifically, § 627.727(1) provides the following: "The [OIR-approved] form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: 'You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully.'"

form, the statute eliminates the need for any other evidence to prove that an informed and knowing rejection/selection was made.

Since § 627.727(1) provides a conclusive presumption that there was an informed and knowing rejection/selection regarding the amount of UM coverage being sought when the applicant unambiguously fills out and signs an OIR-approved form, it would appear to this Court that an applicant cannot proffer extrinsic evidence to show that the applicant made a mistake when filling out the form.[11]  If such extrinsic evidence were allowed, an applicant could select the option to reject UM coverage entirely and then later argue that they had mistakenly selected that option as they had actually intended to select UM coverage in an amount equal to their bodily injury limit.  By requiring an unambiguous written selection on an OIR-approved form, the statute ensures that all parties are able to know for certain exactly what amount of UM coverage is being sought and what amount of UM coverage is legally required to be provided in the policy.

Accordingly, this Court concludes that because Rinberger did not make a valid, unambiguous written election of an amount of UM coverage that is less than the policy's bodily injury limits, CPC's policy was required to be issued with $1 million in UM coverage.  As such, there is $1 million in UM coverage available for the car accident.

While this result may appear unfair or harsh, Amerisure was in the best position to prevent this problem.  Amerisure knew, based on § 627.727, that it was required to provide UM coverage equal to the bodily injury limit in CPC's policy unless CPC made a written rejection of UM coverage or selected lower UM limits.  When Amerisure received and reviewed the

---

[11] The law only recognizes an exception to the conclusive presumption in extraordinary cases involving fraud, forgery, or trickery, none of which was alleged in this case.  See Johnson v. Stanley White Ins., 684 So. 2d 248, 250 (Fla. DCA 1996)(citations omitted).

insurance application, it was immediately apparent that Rinberger had not clearly made an unambiguous written selection of lower UM coverage. At that point, Amerisure could have had Rinberger fill out the form again in the proper manner, which would have eliminated the patently obvious ambiguity, would have complied with the statute, and would have eliminated the need for judicial intervention.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Amerisure's Motion for Summary Judgment (Doc. No. 28) is **DENIED**.

(2) Defendant Dominguez's Motion for Summary Judgment (Doc. No. 32) is **GRANTED**. The Court finds that there is UM insurance coverage of $1 million under the insurance policy at issue.

(3) The pretrial conference that was set for February 5, 2020 is cancelled, and the case is removed from the March 2020 trial calendar.

DONE AND ORDERED at Tampa, Florida, this 3rd day of December, 2019.

*/s/ Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record